IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN O'HAGAN, on behalf of Himself and others similarly situated, Plaintiff, | ) ) ) ) ) | 1:11-cv-5269 |
| v. | ) ) ) | Magistrate Judge Rowland (by consent) |
| BLUE RIBBON TAXI ASSOCIATION, INC., Defendant. | ) ) ) | JURY TRIAL DEMANDED |

**MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL**

Plaintiff respectfully requests submits this memorandum in support of final approval of settlement of this class action, including the proposed attorneys' fees and costs and the Plaintiff's service payment. The parties' settlement now submitted to the Court for final approval, fully and finally resolves this putative class action for alleged violations of the federal Fair Credit Reporting Act ("FCRA").

**I.     INTRODUCTION**

The Settlement includes a $55,000 Settlement Fund that will be used to pay claims of settlement class members in the amount of $500 each.[1] The revised notice plan contemplated by the settlement, which included passing out thousands of short-form notices to customers, was executed by Blue Ribbon. There are <u>no opt-outs</u> and <u>no objections</u>, and <u>six claims</u> that were made. For the reasons herein, the Court should enter an order finally approving the settlement.

In evaluating the fairness of a proposed class action settlement, the most important

---

[1] The Settlement Fund is sufficient to pay all of the claims received in the maximum amount provided by the Settlement, $500.

factor the Seventh Circuit considers is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement. *American International Group, Inc. et al., v. ACE INA Holdings, et al.,* Nos. 07-cv-2898, 09 C 2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) (citations omitted). The parties reached this resolution after three arms-length mediations: two grueling in-person settlement conferences with Judges Nolan and Rowland, and a telephonic settlement conference with Judge Rowland.

The reaction of the settlement class in response to notice of the Settlement was overwhelmingly positive. There were no objections to the Settlement or to the attorneys' fees, costs or service payment proposed. The Court should grant Plaintiff's motion for final approval so that claimants may receive their Settlement benefits. The proposed attorneys' fees and costs as well as the named Plaintiff's service payment also easily meet the requirements for approval.

## II.     STATEMENT OF THE CASE

### A.     The Parties' Claims and Defenses

On or about February 8, 2011, plaintiff Kevin O'Hagan took a taxi ride in one of defendant's taxis. O'Hagan paid by credit card. After running the transaction on the on-board credit card machine, the driver provided plaintiff with an electronically printed credit card receipt that had the entire credit card number and expiration date printed on it.

Plaintiff filed suit against Blue Ribbon on August 3, 2011, alleging that the practice of providing such credit card receipts violated the FACTA amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681c(g). Plaintiff served Blue Ribbon with the complaint and summons on August 12, 2011. [Docket Item 6], and Blue Ribbon went into technical default. After unsuccessfully attempting to contact Blue Ribbon on the telephone, Plaintiff filed a motion for

entry of default and for leave to conduct class discovery on October 31, 2011 [7], which motion was granted on December 1, 2011. [10] The motion for default and for discovery was personally served upon Blue Ribbon. [9].

After receiving no responses to his discovery, on January 20, 2012, plaintiff filed a motion to compel Blue Ribbon to respond. [11] This motion was also personally served upon Blue Ribbon. On February 23, 2012, Judge Zagel entered and continued the motion in order to provide Blue Ribbon more opportunity to respond and/or challenge the motion, and continued the matter until March 15, 2012. [14] Plaintiff personally served Blue Ribbon with the Court's order warning Blue Ribbon that failure to appear would result in entry of default and granting of the motion. [16] Blue Ribbon did not contest the motion, and it was granted. [17]

On April 2, 2012, plaintiff filed a motion for class certification, based upon the defaulted discovery. [18] This motion was personally served upon defendant. On April 26, 2012, the motion for class certification was granted. [21] The class certified was:

> All persons to whom Blue Ribbon Taxi Association, Inc. or any affiliate thereof, provided an electronically printed credit card receipt that had more than the last five digits of the credit card number printed on it, where the receipt was printed between and including January 1, 2010 to February 10, 2011.

On June 12, 2012, plaintiff filed a motion to approve a notice plan consisting of publication notice, only. [26] On June 26, 2012, defense counsel Jerry Boyle filed an appearance on behalf of Blue Ribbon, and at the motion hearing for the motion to approve notice, Judge Zagel entered a referral for mediation with Judge Nolan.

The parties engaged in an approximately four hour mediation with Judge Nolan on September 4, 2012, [37] and agreed to keep discussing settlement and sharing information. On

November 7, 2012, Judge Rowland held a several hour mediation, and on November 16, 2013, Judge Rowland held a telephonic settlement conference, which was successful in reaching this settlement.

### III.     THE TERMS OF THE SETTLEMENT

####     A.     Settlement Class

Upon final approval, the proposed Settlement will establish a Settlement Class defined as follows:

> All persons to whom Blue Ribbon Taxi Association, Inc, or anyone driving a taxi bearing Blue Ribbon's trademark, provided an electronically printed credit card receipt that had more than the last five digits of the credit card number printed on it, where the receipt was printed between and including August 3, 2009, and February 22, 2013.

Settlement, Exhibit 1, ¶B.

This Court conditionally certified the class for settlement purposes only in its Preliminary Approval Order. The present motion seeks a final Order from this Court certifying the class for settlement purposes and approving the Settlement. A fuller discussion of the appropriateness of class certification for settlement purposes is contained in Plaintiff's Preliminary Approval Memorandum [Docket 60].

####     B.     Relief for the Class

Approval of the proposed Settlement would establish a $55,000 Settlement Fund that would be used to pay Court-approved attorneys' fees and costs capped at $23,000, a Court-approved Plaintiff's service payment of $5,000 and settlement class member would receive the maximum payment of $500 apiece. Unused funds will revert to Blue Ribbon.

And although not a specific term of the Settlement Agreement, it is clear that this case

has had a positive effect on Blue Ribbon's policies, practices and procedures. The Court may recall that one theory of how the offending receipts made it to Blue Ribbon customers was that drivers gave out the "merchant copy". Counsel understands that since this case was initiated, Blue Ribbon has instituted a new credit card processing system whereby customers print their own receipts, thus (hopefully) eliminating the human error element that may have caused these violations in the first place.

### C. Notice and Administration

This case presented substantial difficulties associated with class notice. During mediation, through exchange of information between the parties, it was learned that the violation that is the subject of this lawsuit happened as a result of taxi cab drivers giving out the "merchant copy" of credit card receipts, rather than the "customer copy." Merchant copies of credit card receipts contain more information than customer copies, including the credit card number and expiration date, so that merchants can "prove" to credit card companies that a transaction was not fraudulent, a so-called "charge back."

During the class period, it was the practice of Blue Ribbon to save merchant copies of receipts in case of charge backs, and hand the customer copy to customers. However, when taxi cab drivers provided the *merchant* copy to *consumers*, i.e. the violations that are the subject of this lawsuit, Blue Ribbon retained the customer copy, which appears to have been properly truncated to omit information that could possibly assist in finding the class member.[2] Informal and formal discovery indicates that there were an estimated 1,000 merchant receipts

---

[2] Counsel's experience with FACTA cases strongly suggests that obtaining the names and addresses of credit card holders very well might be impossible, even if the parties had full account numbers.

given out over the two-year class period.

Thus, the parties proposed, and the Court approved, a notice plan calculated to reach as many customers as practicable. This plan included provision of 5,000 short-form notices to Blue Ribbon customers, which referred customers to a settlement website, where the settlement agreement, long form notice were posted. There was also a simple claim submission process on the website, which was accessible both through use of a computer or a handheld device, such as an iPhone.

In class counsel's view, given these circumstances, the notice plan approved by the Court in its preliminary approval order was the best practicable under the circumstances.

In accordance with the Court's Preliminary Approval Order and subsequent in-court discussions and modifications, the approved forms of Notice were distributed directly to taxi riders. Attached as <u>Appendix A</u> is the affidavit of Sabir Waheed, president of Blue Ribbon Taxi Association, Inc., affirming that nearly all of the 5,000 required notices were distributed during the class period.[3] Attached as <u>Appendix B</u> are affidavits of Blue Ribbon taxi cab drivers, who each distributed approximately 100 abbreviated class notices. <u>Appendix C</u> contains a spreadsheet of spot-checks that were performed, in order to ensure that drivers were implementing the notice plan according to the settlement's requirements. Additionally, pursuant to the Settlement Agreement, the website www.BlueRibbonTaxiSettlement.org was up and running the entire class period. <u>Appendix D</u>. The website had the settlement documents available for download, and was interactive, so that class members could easily file claims.

---

[3] Appendix B accounts Blue Ribbon is still compiling affidavits from its drivers, and has indicated that these affidavits will be obtained before the September 12, 2013 final approval hearing. The current count of notices distributed, according to the affidavits, is approximately 4,871.

  **D.**  **Opt Out Opportunity and Right to Object**

After receiving notice, settlement class members had an opportunity to exclude themselves from the Settlement or to object to its approval. Settlement, ¶10(b). No one objected to any aspect of the Settlement, and no one asked to be excluded. *Id.* at ¶14.

  **F.**  **Release**

The release is appropriately tailored to the claims raised in this case. In exchange for Settlement benefits, Plaintiff and participating settlement class members will release Blue Ribbon and its drivers and related parties for claims that arise out of improper electronic printing of too much information on their credit card receipts. Specifically, the release states that plaintiff and all class members release "Defendant," a term of art under the settlement, for the following:

> all claims, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated that, as of the date that the final judgment is entered arising from the allegedly improper electronic printing of credit card receipts.

Settlement Agreement, ¶13. "Defendant" is defined in the Settlement Agreement, ¶1.2, as

> Blue Ribbon Taxi Association, Inc., its members, their lessees and drivers, and any of its or their present or former parents, subsidiaries, divisions, affiliates, officers, directors, employees, trustees, principals, attorneys, agents, representatives, sales associates, distributors, vendors, shareholders, insurers and partners, as well as any person acting or purporting to act on their behalf or on behalf of those in privity with Defendant and the Settlement Class.

In class counsel's judgment, this release is appropriately tailored to fit the claims, and the settlement.

IV. **THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND WARRANTS FINAL APPROVAL**

In evaluating the fairness of a settlement, the court should consider the following factors: (1) the strength of plaintiffs' case compared to the amount of defendants' settlement offer; (2) the likely complexity, length and expense of the litigation; (3) the amount of opposition to the settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement. *Synfuel Tech., Inc. v. DHL Express (USA), Inc*, 463 F.3d 646, 653 (7th Cir. 2006), *citing Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). "In evaluating the fairness of a settlement, the court views the facts in the light most favorable to the settlement." *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*, 280 F.R.D. 364, 375 (N.D. Ill. 2011), *citing, Isby*, at 1199. "[T]he Court must not substitute its own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Id*., *citing Armstrong v. Board of school Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980).

A. **All of the Factors Weigh in Favor of Final Approval**

1. **The $55,000 Settlement Fund Provides Significant Benefits to the Settlement Class.**

The first, and "'most important factor relevant to the fairness of a class action settlement' is . . . 'the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement.'" *Synfuel*, 463 F.3d at 653, *quoting In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979). The benefit to the settlement class is the fundamental and most important test of the reasonableness of a settlement. *Armstrong*, 616 F.2d at 314.

Collection of a money judgment against Blue Ribbon would have been extremely difficult, if not impossible. Blue Ribbon indicated that it would certainly go into bankruptcy as a result of any class judgment. Given this risk, plus the risk of opposing a motion to vacate default that was based upon unanswered requests for admission, the inherent delays, and the desirability of obtaining prompt and effective relief for the settlement class, the $55,000 settlement fund constitutes a very substantial settlement. "By their very nature, because of the uncertainties of outcome, difficulties of proof, and length of litigation, class action suits lend themselves readily to compromise." 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2011) (citations omitted). Especially when balanced against these risks and uncertainties, the economic relief afforded by the Settlement confers a significant benefit on the settlement class.

Because six persons submitted claims, each person will receive $500, which is a significant benefit. The statutory damages to which any class member would be entitled under the FCRA had plaintiff succeeded at trial would be between $100 and $1,000. Therefore, $500 represents 500% of the potential minimum $100 statutory damages claim. The fact that it is available on a class-wide basis, to individuals who did not expend time and effort to litigate their own claims is remarkable.

Finally, it is worth noting that, as a result of this case, Blue Ribbon has changed its practices to avoid the human error that caused the violations in the first place. The significant economic benefit to the Settlement Class, coupled with the Blue Ribbon's changes to ensure FCRA compliance demonstrate that the proposed Settlement is fair, reasonable, and appropriate.

9

### 2. The Complexity, Length and Expense of Protracted Litigation Makes The Instant Action Appropriate For Settlement

The second factor considered by the *Synfuel* court in determining whether to approve the settlement was "the likely complexity, length and expense of the litigation." *Synfuel*, 463 F.3d at 653. As detailed above, any judgment would likely result in protracted motions to vacate the technical default, and ultimately bankruptcy proceedings. *See*, *Schulte,* 805 F.Supp.2d at 582 (discussing the complexity and length of consumer class action litigation). This settlement is in the best interest of the class because it provides substantial, concrete, relief.

### 3. The Reaction Of The Class Has Been Positive And Opposition To The Proposed Settlement Has Been Minimal

The third factor considered by the *Synfuel* court is "the amount of opposition to settlement among affected parties." *Synfuel*, 463 F.3d at 653. Here, there has been a strong positive reaction to the settlement by the class, and no oppositions. Of the approximately 1,000 class members, six filed claims. No one has asked for exclusion, and no one has objected.

### 4. Settlement Class Counsel Believe That The Settlement Is Fair, Reasonable And In The Best Interest Of Settlement Class Members

The fourth factor articulated by the *Synfuel* Court, "the opinion of competent counsel," is an important consideration. *Synfuel*, 463 F.3d at 653; *see also Meyenburg v. Exxon Mobil Corp.*, 2006 WL 2191422, at *17-18 (S.D. Ill. 2006); *Isby,* 75 F.3d at 1200; 4 NEWBERG, *supra*, § 11.47 (citations omitted). Counsel have set forth their considered judgment regarding the fairness of the relief provided by settlement in the Declaration Alexander H. Burke. Appendix E.

Here, the proposed settlement is the product of extensive, adversarial, arm's-length negotiations conducted by counsel experienced in class action litigation, and specifically experienced in litigating consumer protection cases. As discussed above, the proposed

10

settlement offers the Settlement Class a substantial portion of the relief sought, and that which could be obtained at trial. Thus, in counsel's view, the proposed settlement is fair, reasonable and in the best interest of the Settlement Class. Appendix E.

### 5. Plaintiff Conducted Extensive Discovery and Has Vigorously Litigated and Negotiated This Settlement.

The last *Synfuel* factor is "the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel*, 463 F.3d at 653. As discussed supra, this case was in an unusual posture when it went into mediation. Blue Ribbon had not appeared in the case, and plaintiff had obtained a technical default for failure to appear. Plaintiff had also obtained defaulted requests for admission pursuant to Fed.R.Civ.P. 36(b), and Judge Zagel certified a class based upon those defaulted requests for admission. Certainly the case was litigated vigorously by plaintiff. The posture of the case conclusively demonstrates the absence of collusion.

### 6. All Class Members Were Given Proper And Reasonable Notice

The Notice scheme approved by the Court was executed in accordance with the Court's Preliminary Approval Order and comported with the due process requirements of the Federal Rules. Under Rule 23(c)(2), individual notice must be given to class members "who can be identified through reasonable effort," and others must be given "the best notice practicable under the circumstances." What matters is whether the parties "acted reasonably in selecting means likely to inform persons affected, not whether each [class member] actually received notice."[4] *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988); *accord Purnell v. Sheriff*

---

[4] The Rule coincides with the requirements of due process, as set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950).

*of Cook County*, 2009 WL 1210651, at *7-8 (May 4, 2009) (citing *Fontana v. Elrod*, 802 F.2d 729, 731 (7th Cir. 1987)).

Here, the Notice provided was entirely reasonable under the circumstances. This Court approved the form, substance and method of notice, finding that it constituted the best notice practicable under the circumstances. In accordance with the Court's Preliminary Approval Order, approximately 5,000 notices were handed out to Blue Ribbon Taxi customers during the claims period, and an easy-to-use website was up, so that class members could submit claims. Appendices A-D.

The content of the Notice satisfies due process and Rule 23 in that it clearly outlines the nature of the case and the remedies offered by the Settlement, and provides clear, conspicuous and repeated notice of the class member's rights to object or opt-out. *See Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001).

**V. THE REQUESTED ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES ARE REASONABLE AND APPROPRIATE AND SHOULD BE AWARDED BY THIS COURT**

**A. The Requested Fees and Expenses Meet the Seventh Circuit's Standards for Approval**

Plaintiff is seeking an award of $23,000 in counsel fees and costs. The litigation was hard fought, involved substantial strategy and discovery, as well as substantial risks for counsel. The proposed fee and cost award easily meets the requirements for approval, particularly since notice of the proposed fee award was made pursuant to Rule 23 and this courts' preliminary approval order. No settlement class member objected.

As demonstrated in class counsel's declaration in Appendix E, class counsel expended more than eighty hours litigating this case. Given class counsel's hourly rate of $550, this amounts

to a lodestar of $44,220, well above the $23,000 that was negotiated. In view of the excellent results obtained for the settlement class and the substantial benefit conferred, the Court should approve Counsel's request.

## VI. NAMED PLAINTIFF SERVICE PAYMENT

The Seventh Circuit has held that "[i]ncentive awards are justified when necessary to induce individuals to become named representatives." *Synthroid*, 264 F.3d at 722. "since without the named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case specific expenses." 4 NEWBERG §11.38 (4th ed).

Factors relevant to determining whether an incentive award is proper, and the amount of such award, "include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those action, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 104, 1016 (7th Cir. 1998).

Here, the proposed service award of $5,000 is justified by the result Plaintiff O'Hagan obtained for the class. Mr. O'Hagan, an attorney, exercised substantial judgment in assisting with negotiations and litigation strategy. Mr. O'Hagan also withstood the difficult position of having Magistrate Judge Nolan strongly recommend an individual settlement of this matter, which would likely have resulted in substantially more than $5,000 for him, personally. See Docket Entry 39, "Counsel agreed to meet and confer regarding the issue as to whether or not to pursue class action." Instead of taking the quick, easy money, Mr. O'Hagan did what was right and obliged his duties to the class of others whose FCRA rights were violated.

Perhaps most important, notice of the proposed service payment was made to the settlement class and no settlement class member objected. For these reasons, the Court should award the full $5,000 contemplated by the settlement.

VII. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant his motion for final approval.

Respectfully submitted,

/s/ Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com